# Case No. 25-20470

# In The United States Court of Appeals For the Fifth Circuit

---

Jocelyn Moreno,

Plaintiff – Appellant

v.

Dealer Integrated Services LLC,

Defendant – Appellee

---

## On Appeal from

United States District Court for the Southern District of Texas

No. 4:24-CV-00981

---

## BRIEF OF APPELLANT JOCELYN MORENO

---

SUBMITTED BY:

Ahad Khan
Texas Bar No. 24092624
712 Main Street, Suite 900
Houston, TX 77002
713-401-3558 – Telephone
ak@ahadkhanlaw.com - Email

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of 5th Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Dealer Integrated Services LLC | Gregg M. Rosenberg of Rosenberg & Associates, Houston, Texas |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Jocelyn Moreno | Ahad Khan of Ahad Khan Law PLLC, Houston, Texas |

/s/ Ahad Khan
Attorney of Record for Appellant
Jocelyn Moreno

ii

## **STATEMENT REGARDING ORAL ARGUMENT**

Appellant respectfully requests oral argument in this case.  The Court's analysis will aid lawyers, courts, and commentators in analyzing future employment cases under Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act.  Briefs cannot substitute for the three-dimensional experience of oral argument, in allowing the litigants to explain their positions and allowing the Court to satisfy its inquiries.  As Socrates articulated, communication must be tailored to the speaker and the listener, sown not in ink but in the soul, and only in oral communication is there clearness and perfection and seriousness.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS…………… ................................ ii

STATEMENT REGARDING ORAL ARGUMENT……………........... ……….iii

TABLE OF CONTENTS…………….......................................……….iv

TABLE OF AUTHORITIES…………….......................................... ……….vii

JURISDICTIONAL STATEMENT………………...........................……….1

STATEMENT OF THE ISSUES…………….......................................……….2

STATEMENT OF THE CASE…………….......................................……….3

SUMMARY OF THE ARGUMENT………………...........................……….10

ARGUMENT……………......................................................………12

STANDARD OF REVIEW………………...........................................………12

   I.  The District Court Erred in Granting Summary Judgment as to Moreno's Pregnancy Discrimination and FMLA Retaliation Claims Because She Presented Sufficient Direct Evidence ……………..........................……….13

     A. Legal Standards for Pregnancy Discrimination………………...…………13

     B. Legal Standards for FMLA Retaliation…………….........................……14

     C. Moreno Presented Sufficient Direct Evidence……………...................……15

1. The District Court Failed to Analyze Roberts's Statement as Direct Evidence of FMLA Retaliation…………….......................……16

2. Roberts's Statement Tied Moreno's Maternity Leave to His Employment Decision………….......................................……17

II. *McDonnell Douglas* Should No Longer Apply to Title VII and FMLA Claims at Summary Judgment Because the Framework is Atextual and Inconsistent with Rule 56……………......................................……19

III. Even if *McDonnell Douglas* Applies, the District Court Erred in Granting Summary Judgment as to Moreno's Title VII and FMLA Claims Because She Presented Sufficient Evidence of Pretext……………...................……23

A. Legal Standards for Circumstantial Evidence…………….........……….23

B. Legal Standards for Pretext……………...........................……….24

C. Moreno Establishes Pretext……………...........................……….27

1. DIS Provided Shifting and Inconsistent Explanations for Moreno's Termination at Different Times……………...........................……28

2. DIS's Articulated Reasons for Moreno's Termination are False……………........................................……31

3. Even if Robert's Statements are Not Counted as Direct Evidence, They Show Circumstantial Evidence of Discriminatory Animus……………........................................……33

4. Other Employees Regularly Engaged in the Same Alleged Conduct as Moreno Without Discipline……………...........................……35

D. A Showing of Pretext Was Not Required for Moreno's FMLA Interference Claim……………..............................................……….37

IV. The District Court Erred in Granting Summary Judgment on Moreno's FMLA Individualized Notice Claim Because She Presented Sufficient Evidence to Create a Genuine Dispute of Fact as to Prejudice………...............................................................……….39

A. Legal Standards for Failure to Provide Notice Under the FMLA……………..............................................……….39

B. The District Court Erred in Determining Moreno Showed No Evidence of Prejudice……………..............................................……….40

V. The District Court Failed to Apply the Mixed-Motive Framework………...............................................…..42

VI. This Case Is Appropriate for Trial………...............................………45

CONCLUSION……………..............................................……….47

CERTIFICATE OF SERVICE……………...............................................……….48

CERTIFICATE OF COMPLIANCE……………...............................................……….49

# TABLE OF AUTHORITIES

**CASES**

*Allen v. USPS,* 64 F.4th 292 (5th Cir. 2023) ..........................................26

*Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025)....................19, 20, 21, 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................20

*Assariathu v. Lone Star Health Mgmt. Assocs., L.P.*, 516 F. App'x 315 (5th Cir. 2013) ........................................................................................35

*Bernard v. Bishop Noland Episcopal Day Sch.*, 630 F. App'x 239 (5th Cir. 2015) ........................................................................................40, 41

*Bernard v. EDS Noland Episcopal Day Sch.*, 62 F. Supp. 3d 535 (W.D. La. 2014) ........................................................................................41, 42

*Black v. Pan Am. Labs., LLC*, 646 F.3d 254 (5th Cir. 2011) ....................24, 42, 43

*Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379 (5th Cir.1998)............14

*Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008) ....................21

*Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996)..............................15, 16, 17

*Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858 (5th Cir. 1993) ......................18

*Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571 (5th Cir. 2020)..............24, 26, 37

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408 (5th Cir. 2007) ........................................................................................28, 29, 30, 31

*Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015)....31, 32, 33

*Caldwell v. KHOU-TV*, 850 F.3d 237 (5th Cir. 2017) ..............................................28

*California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S 272 (1987).......................13

*Campos v. Steves & Sons, Inc.*, 10 F.4th 515 (5th Cir. 2021) ...............26, 29, 31, 43

*Chaffin v. John H. Carter Co.*, 179 F.3d 316 (5th Cir. 1999) ...........................14, 38

*Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400 (5th Cir. 2011) ............26, 27

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) ..........................33

*Coleman v. Donahue*, 667 F.3d 835 (7th Cir. 2012) ...............................................22

*Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342 (5th Cir. 2013).............................38

*Dabassi v. Motiva Enters.*, 107 F.4th 500 (5th Cir. 2024) ................................12, 46

*Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011) .................................12

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ...................................................43

*Donaldson v. CDB Inc.*, 335 Fed. Appx. 494 (5th Cir. 2009)..................................46

*Downey v. Strain*, 510 F.3d 534 (5th Cir. 2007) .....................................................40

*EEOC v. Ryan's Pointe Houston.* No. 19-20656, 2022 U.S. App. LEXIS 27079
  (5th Cir. 2022)...................................................................................................34, 35

*EEOC v. WC&M Enters.*, 496 F.3d 393 (5th Cir. 2007)..........................................12

*Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409 (5th Cir. 2003) .......................15

*Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959 (5th Cir. 2016)................13

*Fairchild v. Coryell Cnty.*, 40 F.4th 359 (5th Cir. 2022) ........................................26

*Fitzpatrick v. Pontotoc Cty., Miss.*, 612 Fed. App'x. 770 (5th Cir. 2015)........25, 31

*Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002)......................................24, 25, 28, 33

*Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470 (5th Cir. 2015). ..............26, 34

*Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll.*, 719 F.3d 356 (5th Cir. 2013)..................................................................................24, 25

*Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023)......................................19

*Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286 (5th Cir. 2024)....................24, 27

*Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224 (5th Cir. 2016)…………………. ...........................................................................................25, 26, 46, 47

*Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757 (5th Cir. 2001)……………14

*Jones v. Children's Hosp.*, 58 F. Supp. 3d 656 (E.D. La. 2014)……………...38, 39

*Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003). ...........................................25, 34

*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007). ................................23

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).............19, 20, 21, 22, 23

*Morris v. Town of Independence*, 827 F.3d 396 (5th Cir. 2016)............................23

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ...............................................19

*Nall v. BNSF Ry. Co.*, 917 F.3d 335 (5th Cir. 2019)..............................................22

*Nero v. Indus. Molding Corp.*, 167 F.3d 921 (5th Cir.1999) ..........................14, 38

*Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464 (1962)........................47

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940 (5th Cir. 2015) ..............................................................................................................37

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) ................................................21

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) ....................24, 42, 43

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002).........................14, 39

*Ray v. United Parcel Serv.*, 587 F. App'x 182 (5th Cir. 2014) ...................15, 16, 17

*Reed v. Neopost USA, Inc.*, 701 F.3d 434 (5th Cir. 2012).......................................34

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)……………….

..........................................................……………….23, 24, 25, 31, 38

*Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327 (5th Cir. 2005) .................43

*Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386 (5th Cir. 2020) ...............25, 26

*Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010) ...............................................44

*Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224 (5th Cir. 2015)..................................34

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).......................................23, 24

*Starnes v. Wallace*, 849 F.3d 627 (5th Cir. 2017) ..................................................46

*Staten v. New Palace Casino, LLC*, 187 Fed. App'x 350 (5th Cir. 2006) ..25, 28, 31

*Tolan v. Cotton*, 572 U.S. 650 (2014). .......................................................27, 45, 46

*Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F. App'x 421 (5th Cir. 2018)..15

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)................................15

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir. 2007) ..................12

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir. 2001) ........................17, 18

*Whittington v. Harris County, Tex.*, No. 24-20172, 2025 U.S. App. LEXIS 16585

 (5th Cir. 2025)............................................................................27

*Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014) ...............................23

*Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296 (5th Cir. 2000)........................35

**STATUTES**

28 U.S.C. § 1291. ....................................................................1

28 U.S.C. § 1331. ....................................................................1

29 U.S.C. §§ 2601–2654. ....................................................1, 19

29 U.S.C. § 2601. ..................................................................14

29 U.S.C. § 2612 ...................................................................14

29 U.S.C. § 2615 .........................................................14, 15, 37

42 U.S.C. § 2000e–2000e-17 ..............................................1, 19

42 U.S.C. § 2000e .................................................................13

42 U.S.C. § 2000e-2 ......................................................13, 21, 43

**RULES**

Fed. R. Civ. P. 56 ...........................................................12, 20, 21

**REGULATIONS**

29 C.F.R. § 825 ...................................................................................39, 40

## JURISDICTIONAL STATEMENT

The district court properly exercised subject matter jurisdiction under 28 U.S.C. § 1331; 42 U.S.C. § 2000e–2000e-17; and 29 U.S.C. §§ 2601–2654. This Court has jurisdiction under 28 U.S.C. § 1291. Final Judgment was entered on September 16, 2025. ROA.253. Appellant timely filed her notice of appeal on October 16, 2025. ROA.254. This appeal is from a final judgment that disposes of all claims. ROA.253.

## STATEMENT OF THE ISSUES

The issues to be ruled on by this Court are:

I.     Whether the district court erred in granting summary judgment as to Appellant's pregnancy discrimination and FMLA claims where she presented sufficient direct evidence to create a genuine dispute of material fact.

II.    Whether the *McDonnell Douglas* burden-shifting framework should apply at summary judgment when the framework is atextual and inconsistent with Federal Rule of Civil Procedure 56.

III.   Whether the district court erred in granting summary judgment as to Appellant's pregnancy discrimination and FMLA claims where she presented sufficient evidence to create a genuine dispute of material fact as to pretext.

IV.    Whether the district court erred in granting summary judgment as to Appellant's FMLA individualized notice claim where she presented sufficient evidence to create a genuine dispute of material fact as to prejudice.

V.     Whether the district court erred in failing to apply a mixed-motive analysis when a genuine dispute of material fact exists as to whether Appellant's pregnancy was a motivating factor in her termination.

**STATEMENT OF THE CASE**

Dealer Integrated Services ("DIS") suddenly terminated Jocelyn Moreno's ("Moreno") employment just four days after its owner, Jonathan Chad Roberts ("Roberts"), learned that she qualified for up to 12 weeks of leave under the FMLA and decided he would not provide that entitlement. ROA.173; ROA.183-84. Roberts chose to terminate the six months' pregnant Moreno because she was about to go out on FMLA leave and he did not want to risk losing non-pregnant employees. ROA.169-70; ROA.184-85.

Moreno began working for DIS as a recruiter in April 2017. ROA.156-57. She rose through the ranks over the next six years, earning a promotion to Payroll Administrator while processing payroll for hundreds of employees. ROA.158-60; ROA.193. DIS trusted Moreno to train a number of its staff, including Valerie De la Cruz ("De la Cruz"), who worked in accounts receivable; Patricia Mauricio ("Mauricio"), an office assistant; and Rachel Goins ("Goins"), a payroll administrator. ROA.160-62; ROA.180; ROA.196.

Moreno reported to Office Manager Deborah Devine ("Devine"), who in turn was overseen by Roberts. ROA.159; ROA.175; ROA.196. Devine has a longstanding reputation for hostility and toxic behavior in the workplace. ROA.165-66. Employees regularly raised concerns about Devine's demeaning and disruptive conduct, including Moreno, De la Cruz, and Mauricio. ROA.166. DIS was aware

3

of these issues; in fact, Roberts considered terminating Devine in 2021 due to her misconduct and ultimately required her to work remotely for several months to reduce tensions. ROA.189; ROA.199. As a neutral party stated: "When it came to office toxicity and animosity, Devine was often involved." ROA.196.

In April 2023, Moreno informed DIS that she was pregnant with her first child and anticipated needing a few months of leave around her due date in September. ROA.169-70. DIS did not inform Moreno of her FMLA eligibility; this is undisputed. ROA.189; ROA.202. Due to DIS's failure to notify her, Moreno was unaware of her rights under the statute, including the amount of protected leave she was entitled to. ROA.171-72. This lack of notice led her to ask whether two months of leave was "reasonable," thereby shorting herself of one-third of her FMLA entitlement. ROA.171.

In the weeks following Moreno's pregnancy announcement, Devine was the source of escalating workplace tensions. ROA.176-78. Prior to this, Moreno was on friendly terms with De la Cruz and Mauricio. ROA.162-63. Both colleagues frequently relied on Moreno as a messenger to relay their concerns about Devine to Roberts. ROA.200. De la Cruz was present on one such occasion when Moreno explained to Roberts that Devine's attitude was getting out of hand. ROA.200. Roberts's response was a shrug of his shoulders and an instruction to Moreno to "give her attitude back." ROA.181; ROA.200.

4

The relationship between Mauricio, De la Cruz, and Moreno began to deteriorate after Moreno announced she would be taking pregnancy leave. The shift in their dynamic was instigated by Devine, who falsely promised De la Cruz and Mauricio that they would receive a salary raise for covering Moreno's duties during the leave. ROA.167-68. Compensation was already a point of tension in DIS's office, after Devine granted De la Cruz access to view all employees' pay records. ROA.177-78. Upon discovering the disparity between her own pay and Moreno's, De la Cruz became frustrated, and her demeanor toward Moreno changed. ROA.179. When De la Cruz began giving Moreno the cold shoulder, Mauricio followed her lead. ROA.164.

After the end of the workday on June 23, 2023, Devine and De la Cruz openly discussed plans to replace Moreno during her leave, unaware she was still in the office waiting for her transportation home. ROA.186-87. As Moreno stepped into a nearby office to drop off a package, she overheard their plot to have Mauricio permanently take over as Payroll Administrator. ROA.186-87. Fearing that her job was not safe, Moreno made plans to meet with Roberts on Monday, the next workday. ROA.204.

On June 26, 2023, Moreno met with Roberts and Devine. ROA.205. During this conversation, Moreno raised concerns about whether her job would be protected and, for the first time, the FMLA was mentioned. ROA.173. Devine, basing her

interpretation of the law on an internet search, announced: "[W]e don't have to keep her job position. We just have to have a job for her available up to three months." ROA.173. Building on this misunderstanding of DIS's obligations under the FMLA, Roberts went on to tell Moreno, "you know, you're only going to be gone two months so yeah we'll keep your position and your job. But if it was three months, I wouldn't be able to cover that. I wouldn't be able to cover it for three months." ROA.173. This discouraged Moreno from requesting the additional leave she was legally entitled to. ROA.174. The same day, Roberts revealed to De la Cruz and Mauricio that the raise Devine promised them would not be forthcoming. ROA.175.

Four days later, Moreno was terminated. ROA.183-84. In a meeting with Roberts and Devine, Roberts told Moreno that her colleagues threatened to quit because of her. ROA.184. These threats arose out of Moreno's pregnancy, as they were prompted by her colleagues' unwillingness to cover her duties during her maternity leave without the raise Devine falsely promised. ROA.176; ROA.188. Roberts then decided, based on coverage concerns, rather than conduct concerns, to terminate Moreno's employment: "[Y]ou're about to go on leave so . . . I can't lose two people when you're going to be taking a leave here soon." ROA.184-85. As such, he claimed he "wouldn't have any office coverage." ROA.185.

Moreno's pregnancy was the but for cause of her termination. Had Moreno not been pregnant and not needed leave, no potential coverage issues would exist, and she would not have been terminated.

DIS has provided different reasons at different times to justify Moreno's termination. In its motion for summary judgment, DIS argued for the first time that Roberts decided to terminate Moreno based on her purportedly "hostile and unreasonable" reaction during the meeting where he disclosed Mauricio and De la Cruz's threats to quit. ROA.67. This explanation is both false and shifting. Roberts had the termination paperwork ready on his desk from the outset of the meeting, before a single word was spoken. ROA.185. Therefore, Moreno's reaction in the meeting could not have been the reason for her termination.

In its summary judgment reply, DIS argued that Moreno was terminated because she "refused to communicate with her colleagues for months despite such communication being an integral part of her job." ROA.232. Moreno disputes this. In fact, it was Moreno's colleagues who refused to communicate with her after Devine instigated toxic workplace dynamics, based on Moreno's sworn testimony: "[De la Cruz] no longer really spoke to me when I would go into the office. I would say 'good morning,' she would ignore me." ROA.162. "Once [De la Cruz] started giving me kind of the cold shoulder, [Mauricio] followed her lead." ROA.164.

7

Moreno consistently maintained positive working relationships with colleagues throughout her time with DIS. ROA.196. A manager described Moreno as a "dependable, hardworking, loyal employee" and someone who "was very good at what she did." ROA.196. Roberts himself once stated he saw Moreno as his right-hand person, helping Devine manage operations at DIS's Houston office when he was away. ROA.196.

Further belying DIS's claims that Moreno was the source of workplace toxicity, Moreno often acted as a buffer between Devine and other employees. ROA.209. This is evident from texts from Mauricio to Moreno in which she expressed gratitude for Moreno helping her "feel more secure" when dealing with Devine in the office. ROA.209. Mauricio even temporarily resigned due to a toxic work environment in April 2023. ROA.65. Contrary to DIS's assertions, Moreno was not the cause. Devine was, based on an incident in which she caused Mauricio to leave the office in tears. ROA.182.

Even Roberts's longtime friend and employee criticized his decision to terminate Moreno, telling Roberts he should have called De la Cruz and Mauricio's bluff. ROA.196. If Moreno was truly the cause of friction within the office, as DIS alleges, her termination should have resolved matters neatly. It did not. Mauricio left the company around one month after Moreno's termination. ROA.189-90; ROA.197. Devine posited that things got to be too much for Mauricio. ROA.197.

Devine herself later left the company, which she shared with Moreno during an attempt to reconcile.  ROA.211.

DIS did not take any disciplinary action against Moreno during her six-year tenure with the company.  ROA.213.  DIS also did not rely on any of its policies or grievance procedures when deciding to terminate her employment.  ROA.215; ROA.217.  Notably, DIS's own policies acknowledge that the company may "erroneously terminate" an employee for cause.  ROA.219.  Such is the case here. These facts constitute both direct and circumstantial evidence that DIS terminated Moreno's employment based on her pregnancy and impending leave.

9

**SUMMARY OF THE ARGUMENT**

The district court erred in granting summary judgment on Moreno's pregnancy discrimination and FMLA retaliation claims because Moreno presented direct evidence that her protected status and exercise of FMLA rights were motivating factors in her termination. A reasonable juror could give weight to the decisionmaker's statement tying Moreno's termination to her FMLA leave, creating a genuine dispute of fact that precludes summary judgment.

Both this Court and the United States Supreme Court have recently purged atextual doctrines from Title VII case law. The *McDonnell Douglas* burden-shifting framework appears nowhere in Title VII or the FMLA, and improperly displaces the summary judgment standard set forth in Federal Rule of Civil Procedure 56. This framework may continue to be instructive in bench trials but should no longer govern at the summary judgment stage.

Even if the *McDonnell Douglas* test is applicable, summary judgment was still improper because Moreno presented sufficient evidence from which a reasonable juror could find DIS's stated reasons for termination to be pretextual. Additionally, Moreno was not required to show pretext for her FMLA interference claim.

The district court erred in granting summary judgment on Moreno's FMLA claim for failure to provide individualized notice. Moreno presented evidence that

10

DIS failed to inform her of her eligibility and rights under the FMLA, and this failure prejudiced her by preventing her from requesting the full leave she was entitled to. Had Moreno been informed of her rights, she would have structured her leave differently.

Finally, the district court failed to analyze Moreno's claims under a mixed-motive analysis. To assert a claim under the mixed-motive alternative, Moreno was not required to directly concede that DIS's explanation was legitimate. Moreno presented sufficient evidence to create a genuine dispute of material fact as to whether DIS impermissibly considered her pregnancy and FMLA leave as motivating factors in its decision to terminate her.

The grant of summary judgment should be reversed.

## ARGUMENT

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Dabassi v. Motiva Enters.*, 107 F.4th 500, 505 (5th Cir. 2024). A party is entitled to summary judgment only if the pleadings, depositions, interrogatory answers, admissions, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011).

On a motion for summary judgment, the district court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See EEOC v. WC&M Enters.*, 496 F.3d 393, 397 (5th Cir. 2007). Courts must therefore "refrain from making credibility determinations or weighing the evidence." *Id.* at 398 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**I.     The District Court Erred in Granting Summary Judgment as to Moreno's Pregnancy Discrimination and FMLA Retaliation Claims Because She Presented Sufficient Direct Evidence**

**A.     Legal Standards for Pregnancy Discrimination**

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits discrimination with respect to the terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a). In 1978, the Pregnancy Discrimination Act amended Title VII to include discrimination "on the basis of pregnancy, childbirth, or related medical conditions" within the composition of unlawful sex discrimination. 42 U.S.C. § 2000e-(k).

As observed by the Supreme Court, "the entire thrust" behind the amendment was "to guarantee women the basic right to participate fully and equally in the workforce, without denying them the fundamental right to full participation in family life." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S 272, 289 (1987) (internal quotations omitted).

A pregnancy discrimination claim is analyzed in the same manner as other Title VII discrimination claims. *See Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016). A plaintiff can prove pregnancy discrimination by direct or circumstantial evidence. *Id.* Moreno presented both.

### B.    Legal Standards for FMLA Retaliation

The Family and Medical Leave Act ("FMLA") allows "employees to take reasonable leave for medical reasons."  29 U.S.C. § 2601(b)(2).  An employee is generally entitled to up to 12 weeks of unpaid leave to care for "the birth of a son or daughter of the employee and in order to care for such son or daughter."  29 U.S.C. § 2612(a)(1)(A).  Employers may not "interfere with, restrain, or deny" the employee's attempt to take leave under the FMLA.  29 U.S.C. § 2615(a)(1); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

"The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers."  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)).

FMLA retaliation falls under the proscriptive set of provisions, which bars employers from penalizing employees and other individuals for exercising their rights.  *See* 29 U.S.C. § 2615(a)(1)-(2); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999); *Bocalbos*, 162 F.3d at 383 ("[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights.") (internal citations omitted).

14

Under 29 U.S.C. § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." A plaintiff alleging retaliation may establish causation in one of two ways: she may either present direct evidence of retaliation; or she may provide circumstantial evidence creating a rebuttable presumption of retaliation. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003).

If a plaintiff "presents direct evidence of discrimination," then "the *McDonnell Douglas* test is inapplicable." *Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F. App'x 421, 427 (5th Cir. 2018) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Trautman*, 756 F. App'x at 427.

### C.   Moreno Presented Sufficient Direct Evidence

As set out in *Brown v. CSC Logic, Inc.* and applied by subsequent cases, in order for comments to constitute direct evidence, they must be "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment

15

decision at issue." *Ray v. United Parcel Serv.*, 587 F. App'x 182, 187 (5th Cir. 2014) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).

Moreno satisfies this test. At the termination meeting, just four days after Roberts discovered she was entitled to twelve weeks of leave under the FMLA, Moreno was told the explicit reason for her discharge: "[Y]ou're about to go on leave so . . . I can't lose two people when you're going to be taking a leave here soon." ROA.184-85. This statement meets all four prongs of the Fifth Circuit's test: 1) it directly referenced Moreno's intent to take FMLA-protected pregnancy leave; 2) it was made at the meeting in which she was terminated, satisfying temporal proximity; 3) it was made by Roberts, the decisionmaker; and 4) it was related to the employment decision, as it was provided as the reason for her termination.

The district court acknowledged that "there is no question the latter three elements are satisfied" but concluded that Roberts's comment 1) did not "explicitly reference Moreno's pregnancy" and 2) was "too attenuated to satisfy the first element of direct evidence in a Title VII case." ROA.248. This determination was erroneous.

### 1. The District Court Failed to Analyze Roberts's Statement as Direct Evidence of FMLA Retaliation

In her response to DIS's motion for summary judgment, Moreno presented Roberts's statement first as direct evidence of FMLA retaliation, then as direct evidence of pregnancy discrimination. ROA.139, ROA.142. However, the district

16

court evaluated the statement only in the context of Moreno's pregnancy discrimination claim and did not apply it to Moreno's FMLA retaliation claim. ROA.248.

By focusing solely on whether Roberts explicitly referenced Moreno's pregnancy, the district court ignored the fact that Roberts explicitly referenced Moreno's protected FMLA leave. ROA.184-85. This satisfies the first element for direct evidence. *Ray v. United Parcel Serv.*, 587 F. App'x 182, 188 (5th Cir. 2014) (finding the proffered comments "satisfied the first *CSC Logic* requirement, since they specifically implicate [the plaintiff] as a manager requesting FMLA leave."). As such, Moreno satisfied all four elements required to show direct evidence of FMLA retaliation.

### 2. Roberts's Statement Tied Moreno's Maternity Leave to His Employment Decision

The district court further discredited Moreno's direct evidence by determining it was "too attenuated to satisfy the first element of direct evidence in a Title VII case." ROA.248 (relying on *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 223 (5th Cir. 2001)). For several reasons, *Wallace* is distinguishable.

In *Wallace*, the Fifth Circuit addressed a comment made by an individual who did not participate in the plaintiff's termination decision and who stated: "I don't know how to classify you because you were gone three months and now you'll be gone three months again." *Wallace*, 271 F.3d at 222. The Court determined this

17

remark was insufficient to show direct evidence of pregnancy discrimination because it was a "general statement" that merely observed that the plaintiff had taken leave. *Id.* at 223 ("If we were to make this inference and countenance this general statement as evidence of discriminatory intent, we would find in effect that any employer's remark observing that an employee has taken leave constitutes such evidence.").

The statement at issue here is distinguishable. First, unlike the speaker in *Wallace*, Roberts was the undisputed decisionmaker. Second, unlike the generalized observation in *Wallace*, Roberts did not merely note that Moreno would be taking leave; he also expressly tied her upcoming leave to his termination decision: "[Y]ou're about to go on leave so . . . I can't lose two people *when you're going to be taking a leave here soon.*" ROA.184-85 (emphasis added). Third, the plaintiff in *Wallace* did not assert an FMLA retaliation claim, and thus the Court's discussion did not consider whether the statements pertaining to leave constituted direct evidence of FMLA retaliation. *Wallace*, 271 F.3d at 222.

As such, the district court's reliance on *Wallace* is misplaced, and Roberts's statements could lead a reasonable juror to conclude Moreno's FMLA leave "in part motivated or was a substantial factor" in her termination. *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). This, together with the fact that DIS failed to cite any contemporaneous evidence for its assertion that it "would have

terminated [Moreno] regardless of whether she was pregnant or taking FMLA leave," made summary judgment improper. ROA.233. Finally, Moreno needed FMLA leave because of her pregnancy, inextricably linking the two claims.

Accordingly, the district court's grant of summary judgment should be reversed.

## II. *McDonnell Douglas* Should No Longer Apply to Title VII and FMLA Claims at Summary Judgment Because the Framework is Atextual and Inconsistent with Rule 56

Both this Court and the United States Supreme Court have recently purged atextual doctrines from Title VII case law. *See Hamilton v. Dallas County*, 79 F.4th 494, 497 (5th Cir. 2023) (removing the requirement of an ultimate employment action); *Muldrow v. City of St. Louis*, 601 U.S. 346, 360 (2024) (removing the requirement of showing significant harm); *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309 (2025) (removing the background circumstances rule requiring members of a majority group to satisfy a heightened evidentiary standard).

And for good reason. "Judge-made doctrines have a tendency to distort the underlying statutory text, impose unnecessary burdens on litigants, and cause confusion for courts." *Ames*, 605 U.S. at 313 (Thomas, J., concurring).

The *McDonnell Douglas* framework has no basis in the text of Title VII or the FMLA. *See* 42 U.S.C. §§ 2000e–2000e-17; 29 U.S.C. §§ 2601–2654; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Nor does it have any basis

19

in any other law. *Ames*, 605 U.S. at 320 (Thomas, J., concurring). It is entirely judge-made. *Id.* It should be the next atextual doctrine to go. *See Id.* at 322 (*McDonnell Douglas* "is incompatible with the summary-judgment standard" and "fails to encompass the various ways in which a plaintiff could prove his claim").

*McDonnell Douglas* was originally developed for courts to use in a bench trial. *Id.* at 319. There, it may continue to be appropriate. But summary judgment is not a bench trial. The role of factfinder is reserved for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The *McDonnell Douglas* framework is incompatible with summary judgment standards. Rule 56 requires a court to grant summary judgment when *the movant* establishes there is "no genuine dispute as to any material fact…" Fed. R. Civ. P. 56(a). The *McDonnell Douglas* framework flips that standard by requiring the non-movant plaintiff to produce evidence showing pretext. But "a plaintiff need not establish or prove any elements—by a preponderance [of the evidence] or otherwise—to survive summary judgment." *Ames*, 605 U.S. at 322 (Thomas, J., concurring) (internal citation omitted). Instead, the plaintiff just needs to point to sufficient evidence to create a "genuine dispute as to" the ultimate issue of discrimination. *Ames*, 605 U.S. at 323 (Thomas, J., concurring). Therefore, at the third and final stage of the *McDonnell Douglas* framework, the proper standard should be whether the plaintiff can "present sufficient evidence to create a 'genuine

20

dispute as to' whether the employer's stated reason was pretextual." *Id.* at 323 (quoting F. R. Civ. P. 56(a)).

Furthermore, Title VII provides that an unlawful employment practice is established when the complainant demonstrates that a protected characteristic "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). The *McDonnell Douglas* standard heightens the employee's burden of proof to show that the employer's rationale was *wholly* pretextual instead of allowing for a true mixed motive analysis where the employer's articulated reason was *part* of the reason for the employer's action and the employee's protected characteristic was another *part* of the reason. *See Ames*, 605 U.S. at 323-24 (Thomas, J., concurring); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989).

Finally, the *McDonnell Douglas* framework is confusing, clunky, and can lead to unjust outcomes on both sides. *See Ames*, 605 U.S. at 319 (Thomas, J., concurring) (*McDonnell Douglas* in "the summary judgment context has caused 'significant confusion' and 'troubling outcomes on the ground'"); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008) (Kavanaugh, J.) (*McDonnell Douglas* "has not benefited employees or employers; nor has it simplified or expedited court proceedings. In fact, it has done exactly the opposite, spawning enormous confusion and wasting litigant and judicial resources.");

21

*Coleman v. Donahue*, 667 F.3d 835, 862-63 (7th Cir. 2012) (Wood, J., concurring) (*McDonnell Douglas* "was designed to clarify and to simplify the plaintiff's task in presenting such a case. Over the years, unfortunately, both of those goals have gone by the wayside."); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 351 (5th Cir. 2019) (Costa, J., concurring) (noting that *McDonnell Douglas* is a "judge-created doctrine" that "has been widely criticized for its inefficiency and unfairness even in the space it is supposed to occupy…").

As the trend of purging atextual judge-made doctrines from Title VII cases continues, the days of *McDonnell Douglas* in the summary judgment context are likely numbered. Moreno invites this Court to set aside the *McDonnell Douglas* standard and instead analyze this case through the appropriate textual lens of Title VII, the FMLA, and Rule 56; that is, whether the evidence in its totality raises a genuine issue of material fact about whether Moreno's pregnancy and FMLA leave motivated her termination. Doing so does not violate Supreme Court precedent. *Ames*, 605 U.S. at 326 (Thomas, J., concurring) ("This Court has never required anyone to use it").

**III.    Even if *McDonnell Douglas* Applies, the District Court Erred in Granting Summary Judgment as to Moreno's Title VII and FMLA Claims Because She Presented Sufficient Evidence of Pretext**

**A. Legal Standards for Circumstantial Evidence**

Summary judgment is improper even if the Court does apply *McDonnell Douglas*. Because discriminatory intent is rarely overt, a plaintiff may present a case based on circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Under this framework, the plaintiff may make a prima facie case of discrimination by showing that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014)).

After the plaintiff establishes a prima facie case, "the burden then shifts to the employer to provide a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Once the employer has proffered a legitimate, non-discriminatory reason, the question of whether the employee actually made a prima facie case is "no longer relevant" and thus "disappears" and "drops out of the picture." *St. Mary's Honor*

23

*Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

After the employer does so, the burden then shifts back to the plaintiff to show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Black v. Pan Am. Lab., LLC*, 646 F.3d 254, 259 (5th Cir. 2011) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (alteration in original).

### B.    Legal Standards for Pretext

"Pretext can be proven by *any* evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (emphasis added); *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024).  Summary judgment is "inappropriate" where the employee "has provided sufficient evidence to cast doubt on [the employer's] explanation" for its challenged employment action. *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002).

The fact that the employer's reason is false or unworthy of credence gives rise to an inference of pretext. *Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll.*, 719 F.3d 356, 365 n.10 (5th Cir. 2013) (reversing summary judgment

and holding that "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence. . . is likely to support an inference of discrimination *even without further evidence of defendant's true motive*.") (italics in original); *Fitzpatrick v. Pontotoc Cty., Miss.*, 612 Fed. App'x. 770, 774 (5th Cir. 2015).

An employee's prima facie case "combined with sufficient evidence to find that the employer's asserted justification for its action was false, may permit the trier of fact to conclude that the employer unlawfully discriminated" without the plaintiff introducing additional and independent evidence of discrimination. *Reeves*, 530 U.S. at 148-49. Thus, "[a] prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability." *Id.* at 149; *see also Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Staten v. New Palace Casino, LLC*, 187 Fed. Appx. 350, 358-359 (5th Cir. 2006); *Gee*, 289 F.3d at 348. The Supreme Court has developed this formula because "there will seldom be eyewitness testimony to the employer's mental processes." *Reeves*, 530 U.S. at 141 (internal quotations omitted).

A "genuine issue of material fact" as to the veracity of the employer's reason for termination "precludes summary judgment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237 (5th Cir. 2016); *Fitzpatrick*, 612 Fed. Appx. at 774; *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020) (holding an employee

can meet its burden by showing "that reasonable minds could disagree about whether these were, indeed, the reasons for her discharge.").

In addition to showing that the employer's proffered explanation is false or unworthy of credence, a plaintiff may also show pretext through evidence of disparate treatment. *Allen v. USPS*, 63 F.4th 292, 301 (5th Cir. 2023) (internal quotations and citations omitted); *Brown*, 969 F.3d at 580 (noting pretext can be shown by demonstrating that similarly situated employees were treated more favorably).

The lens through which the evidence is viewed must always be in the light favorable to the party opposing summary judgment. *Fairchild v. Coryell Cnty.*, 40 F.4th 359, 363 (5th Cir. 2022) ("As is always true at summary judgment, the facts must be viewed in favor of the nonmovant."). As this Court has put it, "we will view the events in this case through the non-movant employee's relevant evidence, even if disputed, and the employer's undisputed evidence." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 518 (5th Cir. 2021).

In determining whether an employer's reason for termination is legitimate or pretextual, "a finder of fact must weigh the evidence." *Heinsohn*, 832 F.3d at 245. A court who weighs the evidence and resolves disputed issues in favor of the moving party does so improperly. *Id.*; *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). Instead, a court "must disregard all evidence favorable to the

26

moving party that the [finder of fact] is not *required* to believe." *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 407 (5th Cir. 2011) (emphasis added). At the summary judgment stage, a court "may make no credibility determinations." *Id.*

Accordingly, "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). This Court has explicitly warned against it. "We would necessarily wade into making credibility determinations, weighing the evidence, and drawing inferences. This we cannot do." *Harris*, 92 F.4th at 298. A reasonable juror can find for the employee even in the face of "substantial evidence" of "poor performance." *Id.*

Summary judgment is inappropriate when "evidence cuts the other way and suggests a rational jury could find the [employer's] story is pretextual." *Whittington v. Harris County, Tex.*, No. 24-20172, 2025 U.S. App. LEXIS 16585, at *10 (5th Cir. 2025) (reversing summary judgment on employment discrimination, retaliation, and hostile work environment claims).

## C. Moreno Establishes Pretext

The district court granted summary judgment as to Moreno's Title VII pregnancy discrimination, FMLA interference, and FMLA retaliation claims solely on the issue of pretext. ROA.250 ("Moreno has not provided sufficient evidence that DIS's stated legitimate, nondiscriminatory [reasons] were a pretext."); ROA.251

27

("…for the same reason [Moreno's] interference and retaliation claims must fail").

However, the record contains a variety of evidence and facts that, if viewed in the

light most favorable to Moreno, could lead a rational juror to find pretext.  The record

shows:

- DIS provided shifting and inconsistent explanations for Moreno's termination at different times.

- DIS's articulated reasons for Moreno's termination are false.

- Even if Roberts's comments do not constitute direct evidence, they show circumstantial evidence of discriminatory animus.

- Several other employees engaged in the same conduct that DIS alleges Moreno engaged in, yet only Moreno was terminated.

Both standing alone and as a whole, these facts create triable issues for a jury.

Each point is discussed in turn below.

### 1. DIS Provided Shifting and Inconsistent Explanations for Moreno's Termination at Different Times

An employer's inconsistent explanations for a decision "cast doubt" on the

truthfulness of those explanations.  *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th

Cir. 2017) (citing *Gee*, 289 F.3d at 347-48); *see also Staten*, 187 Fed. App'x at 359

("[w]hen an employer offers inconsistent explanations for its employment decision

at different times, as here, the jury may infer that the employer's proffered reasons

are pretextual."); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408,

412 n.11 (5th Cir. 2007) ("[A]n employer's inconsistent explanations for its

employment decisions at different times permit[] a jury to infer that the employer's proffered reasons are pretextual.").

In *Burrell v. Dr. Pepper/Seven Up Bottling Group*, the company presented inconsistent explanations to the EEOC and then to the district court for its failure to promote the plaintiff employee. 482 F.3d at 413. The variance in the explanations was a lack of "purchasing experience" versus a lack of "purchasing experience in the bottling industry." But this Court found that the differing statements created a legitimate fact dispute regarding the rationale for the promotion decision. *Id.*; *see also Campos*, 10 F.4th at 530 (noting the variance in *Burrell* was "rather minor" but enough to create "a legitimate fact dispute regarding the rationale for the promotion decision.").

Here, DIS has offered shifting and inconsistent explanations for its termination of Moreno at various points in time. During her termination meeting, Roberts told Moreno the decision was based on the company's inability to "lose two people" when Moreno was "about to go on leave" because he "wouldn't have any office coverage" if De la Cruz and Mauricio quit. ROA.184-85.

Notably, Moreno's termination letter made no mention of coverage concerns, leave, or any colleagues' threats to quit, instead adding a new explanation: "[h]ostile relationships with other employees and argumentative conduct when discussing making payroll changes within our process." ROA.221.

Weeks later, Roberts's longtime friend and employee, Goins, questioned Moreno's termination. ROA.196. Roberts stated then that he had to let Moreno go because two employees threatened to quit unless he terminated Moreno, making no mention of "argumentative conduct when discussing making payroll changes." ROA.196; ROA.221.

DIS's discovery responses diverge from this, omitting any reference to payroll disputes or threats to quit, instead alleging for the first time Moreno "would not cooperate" when "other employees asked for help or support" and was "abusive to the other employees." ROA.214.

DIS shifted its explanation yet again at the summary judgment stage, both in its primary motion and its reply. In its motion, DIS argued that Roberts only decided to terminate Moreno based on her behavior *in the termination meeting.* ROA.67 ("Moreno became hostile and unreasonable almost instantly, which caused Roberts to terminate her employment."). Then, in its reply, DIS shifted its justification again, arguing that "Moreno was terminated for legitimate reasons in that she refused to communicate with her colleagues for months despite such communication being an integral part of her job." ROA.232.

DIS's inconsistent explanations, just like the variances in the company's explanations in *Burrell*, cast doubt on its truthfulness and create a legitimate fact dispute regarding its rationale for terminating Moreno. *See Burrell*, 482 F.3d at 412-

30

13; *see also Staten*, 187 Fed. App'x at 359 (noting "[t]he timing of an employer's changing rationale is also probative of pretext," particularly when the change "occurs after significant legal proceedings have occurred"); *Campos*, 10 F.4th at 530 ("…explanations for the termination that postdate the actual decision are 'potentially manufactured' and indicative of pretext.") (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 238 (5th Cir. 2015)).  The district court erred in determining Moreno failed to meet her pretext burden, and summary judgment should be reversed.

### 2.  DIS's Articulated Reasons for Moreno's Termination are False

Not only are DIS's articulated justifications for terminating Moreno shifting and inconsistent; they are also false.

A plaintiff may demonstrate pretext by showing that the employer's proffered explanation is "unworthy of credence." *Fitzpatrick*, 612 Fed. App'x. at 774.  A plaintiff's prima facie case, "combined with sufficient evidence to find that the employer's asserted justification for its action was false, may permit the trier of fact to conclude that the employer unlawfully discriminated" without the plaintiff introducing additional and independent evidence of discrimination or the employer's true motive. *Reeves*, 530 U.S. at 148-49.  Thus, "[a] prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability." *Id.* at 149.

DIS's claims that it terminated Moreno based on "argumentative conduct when discussing making payroll changes," "lack of cooperation," and "abusive" conduct, are undermined by the complete absence of any contemporaneous documentation supporting those allegations. ROA.214; ROA.221. Throughout her six-year tenure, Moreno was never written up or placed on a performance improvement plan. ROA.189. Despite having a formal grievance policy in place, no grievance was ever filed against Moreno. ROA.217. Further, these allegations are contradicted by the record, which shows Moreno generally maintained positive working relationships with her colleagues. ROA.196.

The lack of contemporaneous documentation along with the disputed facts is sufficient to show pretext. DIS alleges serious conduct issues, going as far as labelling Moreno as "abusive." ROA.214. Yet DIS made no record of these issues at the time they allegedly occurred. ROA.189. Nor was Moreno issued any written disciplinary actions during her employment. ROA.213. Given the severity of the alleged behavior and DIS's access to internal procedures for documenting or addressing such issues, the absence of such contemporaneous documentation undermines DIS's credibility. *See Burton*, 798 F.3d at 240 (lack of contemporaneous documentation was probative where employer claimed a "history of performance problems" but had only minimal evidence, and "compiling

documentation after the fact only highlights the relevance of the absent documentation.").

Further, DIS's post hoc justification at summary judgment—that Roberts only decided to terminate Moreno based on her behavior *in the termination meeting*—is demonstrably false. Moreno's termination letter was already prepared and sitting on Roberts's desk at the outset of the meeting, before any words were exchanged. ROA.185. A reasonable factfinder could find this post hoc rationalization false and unworthy of credence, which makes summary judgment improper. *See Gee*, 289 F.3d at 347-48 (holding that inconsistencies, discrepancies, and conflicts in employer's evidence and testimony allow a reasonable factfinder to conclude it is false and make summary judgment inappropriate); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (holding that deference to an employer's narrative is unwarranted "when it appears that the interpretation is nothing more than a 'convenient litigating position' or a 'post hoc rationalization.'"). Summary judgment should be reversed.

### 3. Even if Roberts's Statements are Not Counted as Direct Evidence, They Show Circumstantial Evidence of Discriminatory Animus

Even if this Court determines that Roberts's statements do not show direct evidence of discrimination and retaliation, his remarks can still be probative of pretext under the more flexible circumstantial evidence standard.

33

When comments by an employer are presented as circumstantial evidence, courts "consider the remarks under a 'more flexible' standard." *Goudeau*, 793 F.3d at 475 (citing *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012)). The more flexible standard is whether the comments show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Goudeau*, 793 F.3d at 475-76 (quoting *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 236 (5th Cir. 2015). Here, Roberts made multiple comments that satisfy this test.

During a meeting in which Moreno learned for the first time that she was entitled to up to 12 weeks of FMLA leave, she asked Roberts if her job would be protected. ROA.173. In response, Roberts stated: "You're only going to be gone two months so yeah we'll keep your position and your job. But if it was three months, I wouldn't be able to cover that. I wouldn't be able to cover it for three months." ROA.173.

This comment by Roberts, the decisionmaker, made Moreno believe she would lose her job if she took her full FMLA entitlement, and exhibits discriminatory animus. *See Laxton*, 333 F.3d at 583 (holding that supervisor's remark expressing frustration over employee's pregnancy timing and impact on staffing "permitted [the jury] to infer discriminatory animus"); *see also EEOC v.*

*Ryan's Pointe Houston*, No. 19-20656, 2022 U.S. App. LEXIS 27079, *19-20 (5th Cir. 2022) (decisionmaker's frustration that plaintiff intended to take full FMLA leave "supports the conclusion that [her] pregnancy played a role in her termination").

Further, Roberts's statement at Moreno's termination meeting specifically linked the adverse employment action to coverage concerns arising from Moreno's upcoming FMLA leave, stating: "You're about to go on leave so…I can't lose two people when you're going to be taking a leave here soon."  ROA.184-85.  This statement reflects discriminatory animus, as it shows that Roberts used Moreno's leave as a determinative factor in her termination.  *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000) (comments are probative of discriminatory intent if they allow a juror to conclude that a protected characteristic "was a determinative factor in the decision to terminate the employee.").

As such, Roberts's comments provide sufficient evidence of pretext, and summary judgment must be reversed.

### 4. Other Employees Regularly Engaged in the Same Alleged Conduct as Moreno Without Discipline

Summary judgment should also be reversed because the record contains ample evidence of disparate treatment.  *Assariathu v. Lone Star Health Mgmt. Assocs., L.P.*, 516 F. App'x 315, 320 (5th Cir. 2013) ("Pretext can be established by showing disparate treatment…").  DIS's other employees, including Devine,

Mauricio, and De la Cruz, engaged in the same and more serious conduct than Moreno without being terminated.

Moreno was allegedly terminated because she "would not cooperate" when "other employees asked for help or support" and was "abusive to the other employees." ROA.214. These allegations are disputed. Yet, even assuming arguendo that Moreno did engage in such conduct, the record shows that her coworkers did the same.

For instance, Devine has a long-standing reputation for hostility and toxic behavior in the workplace. ROA.165-66. Employees regularly raised concerns about Devine's demeaning and disruptive conduct, including Moreno, De la Cruz, and Mauricio. ROA.166. On at least one occasion, Devine caused Mauricio to leave the office in tears. ROA.182. DIS was aware of these issues; in fact, Roberts required Devine to work remotely for several months to reduce tensions she created in the office. ROA.189; ROA.199. As Roberts's long-time friend and employee noted: "When it came to office toxicity and animosity, Devine was often involved." ROA.196.

Further, Mauricio and De la Cruz engaged in the same alleged conduct when they refused to cooperate and ignored Moreno: "[De la Cruz] no longer really spoke to me when I would go into the office. I would say 'good morning,' she would ignore me." ROA.162. "Once [De la Cruz] started giving me kind of the cold shoulder,

36

[Mauricio] followed her lead." ROA.164. Despite her coworkers engaging in this behavior, only Moreno was terminated. The difference between Moreno and her coworkers is Moreno was pregnant and on the verge of starting FMLA leave.

Even if there is a fact question as to whether these employees were similarly situated to Moreno, evidence of differential treatment can still be probative of pretext. *Brown*, 969 F.3d at 580 (citing *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 950 (5th Cir. 2015) (considering evidence of differential treatment received by four employees but noting that the plaintiff had "not demonstrated that those four employees were similarly situated").

As such, this pattern of selective enforcement casts serious doubt on the legitimacy of DIS's stated rationales and supports an inference of pretext, making summary judgment improper.

## D. A Showing of Pretext Was Not Required for Moreno's FMLA Interference Claim

The prescriptive provisions of the FMLA create a series of substantive rights. It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the FMLA. 29 U.S.C. § 2615(a)(1).

The district court granted summary judgment as to Moreno's FMLA interference claim based solely on pretext. ROA.251 ("[Moreno] cannot rebut DIS's legitimate reason for her termination"). However, Moreno's FMLA interference claim does not require a showing of discriminatory intent.

37

As Chief Judge Elrod noted in a special concurrence, "claims that arise from the deprivation of an FMLA entitlement do not require a showing of discriminatory intent, whereas claims that arise from alleged retaliation for an employee's exercise of FMLA rights do." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 (5th Cir. 2013) (Elrod, J., concurring) (comparing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999) with *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999), *partially abrogated on other grounds by Reeves*, 530 U.S. at 146-49).

Contrary to the district court's analysis, Moreno did not assert an FMLA interference claim in a way that required a showing of pretext. Rather, she argued that DIS discouraged and denied her the use of her full FMLA entitlements. ROA.137-38. Moreno was not required to prove DIS's proffered reasons were a pretext as to these claims; she was only required to create a genuine issue of material fact as to whether DIS "discouraged [her] from taking FMLA leave or, alternatively, from taking further FMLA leave." *See Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668-89 (E.D. La. 2014) (noting plaintiff's interference claim did not require a showing of pretext and denying summary judgment because a reasonable juror could find her supervisor discouraged her from using her FMLA entitlement).

Here, similar to the supervisor's statements in *Jones*, Roberts told Moreno he would not be able to cover her job if she took three months of leave. ROA.173

("[Y]ou're only going on leave for two months so yeah we'll keep your position and your job. But if it was three months, I wouldn't be able to cover that. I wouldn't be able to cover it for three months."). Like the plaintiff in *Jones*, Moreno testified that she refrained from requesting additional leave based on these statements. ROA.174. As such, a reasonable jury could find that Roberts's statement discouraged Moreno from taking the FMLA leave she was entitled to. *See Jones*, 58 F. Supp. 3d at 669.

Because the district court granted summary judgment on Moreno's FMLA interference claims solely on the issue of pretext, and Moreno was not required to prove pretext, summary judgment should be reversed.

**IV.    The District Court Erred in Granting Summary Judgment on Moreno's FMLA Individualized Notice Claim Because She Presented Sufficient Evidence to Create a Genuine Dispute of Fact as to Prejudice**

**A. Legal Standards for Failure to Provide Notice Under the FMLA**

As the United States Supreme Court has recognized, an employer's failure to provide proper notice could "deny, restrain, or interfere with the employee's exercise of her right" to take FMLA leave. *Ragsdale*, 535 U.S. at 89–90. Such is the case here.

"When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be made for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days." 29 C.F.R. § 825.300(b)(1). The eligibility notice

39

must state "whether the employee is eligible for FMLA leave as defined in § 825.110." 29 C.F.R. § 825.300(b)(2). Further, "employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.300(c)(1).

To recover under the FMLA for failure to provide individualized notice, a plaintiff must show that the employer failed to comply with the notice requirement and that this noncompliance impaired the plaintiff's ability to exercise her rights under the FMLA, causing prejudice. *Downey v. Strain*, 510 F.3d 534, 541 (5th Cir. 2007).

## B. The District Court Erred in Determining Moreno Showed No Evidence of Prejudice

In its analysis of Moreno's claim for failure to provide individualized notice, the district court determined that "[t]here is no evidence before the Court that DIS met its notification obligations under the FMLA; however, there is also no evidence that Moreno was prejudiced by this failure." ROA.251. To support its determination that Moreno provided no evidence of prejudice, the district court relied on *Bernard v. Bishop Noland Episcopal Day Sch.*, 630 F. App'x 239, 243 (5th Cir. 2015). However, a careful review of *Bernard* indeed underscores why summary judgment is improper here.

40

The *Bernard* opinion resulted from a bench trial, not summary judgment. *Bernard*, 630 F. App'x at 241. This Court affirmed the judgment because the district court, acting as factfinder, made credibility determinations and found that "nothing suggests that Bernard would have chosen to take additional leave had she known" of her FMLA rights. *Id.* at 242-43 ("Her testimony that she would have taken different action had she been informed that the leave available was FMLA leave is not credible."). Applying clear error review, this Court deferred to those findings. *Id.* This Court did not determine that such evidence is insufficient as a matter of law to establish prejudice at the summary judgment stage.

Indeed, the procedural history of *Bernard* confirms the opposite. At the summary judgment stage, the district court denied summary judgment on Bernard's individualized notice claim. *Bernard v. EDS Noland Episcopal Day Sch.*, 62 F. Supp. 3d 535, 548 (W.D. La. 2014). The court reasoned that there was a genuine dispute of fact as to whether Bernard was prejudiced based on her statement that "had she known she was entitled to 12 weeks of unpaid leave under the FMLA that she would have immediately requested additional leave…." *Id.* at 546. Only after hearing testimony and weighing credibility at trial did the district court resolve that factual dispute against Bernard.

Here, at the summary judgment stage, Moreno presented evidence showing that, because DIS never informed her of her eligibility or rights under the statute,

41

she was unable to make an informed decision about her maternity leave. ROA.171-72. Asking if only two months of leave was a reasonable request, Moreno unknowingly shorted herself of approximately one-third of her FMLA entitlement. ROA.171-72. Had she been timely and fully informed that she was entitled to 12 weeks of job-protected leave, she would have requested it. In fact, the record shows that when Moreno finally learned of her FMLA entitlements just four days before her termination, she wanted to take the full leave, but Roberts discouraged her from doing so. ROA.174.

Accordingly, this testimony and supporting evidence create a genuine dispute of material fact as to prejudice, just as it did in *Bernard*. *See* 62 F. Supp. 3d at 546. Likewise, any credibility determination should be left to a finder of fact, and summary judgment should be reversed.

## V.     The District Court Failed to Apply the Mixed-Motive Framework

The district court further erred by failing to apply the mixed-motive framework to Moreno's claims.

A plaintiff relying on circumstantial evidence has two options to defeat summary judgment, by showing either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another

'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Black*, 646 F.3d at 259 (quoting *Rachid*, 376 F.3d at 312).

For a defendant to prevail on summary judgment under the mixed-motive framework, the defendant must show "that the same adverse employment decision would have been made regardless of discriminatory animus." *Rachid*, 376 F.3d at 312.

In her response to DIS's motion for summary judgment, Moreno argued both the pretext and mixed-motive theories of liability:

> Even if the Court were to credit Defendant's claim that Moreno was terminated due to her colleagues' threats to quit, summary judgment is still precluded. Under Title VII, an employer is liable for an adverse employment action if pregnancy was even one motivating factor—even when "other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 518 (5th Cir. 2021); *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

ROA.148.

However, the district court failed to conduct any analysis under the mixed-motive alternative, reasoning in a footnote that "the alternative mixed motive framework for an FMLA retaliation claim does not apply because Moreno does not directly concede that discrimination was not the sole reason for her discharge." ROA.250 n.1 (citing *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005)). This was in error.

43

This Court has determined that plaintiffs are not required to elect to pursue either a mixed-motive or pretext case at this stage. *Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010) ("[A] case need not be correctly labeled as either a 'pretext' case or a 'mixed-motives' case….") (internal quotations omitted). Further, the *Smith* court emphasized that "the mixed-motive framework does not require the plaintiff to concede that the employer's stated reason was legitimate. That is why we have juries." *Id.* The district court's reasoning for refusing to apply the mixed-motive framework is in direct contradiction of this controlling authority. The district court committed reversible error.

Under the mixed-motive framework, Moreno presented sufficient evidence to create a genuine issue of material fact precluding summary judgment. Even assuming arguendo that her colleagues' threats to quit constitute a legitimate motive, the record contains ample evidence from which a jury could find that DIS impermissibly considered Moreno's pregnancy and FMLA leave in the decision to terminate her. *See supra* at § III(C).

A reasonable juror could determine, based on the nature of the colleagues' threats, that the ultimatum was directly caused by Moreno's upcoming maternity leave. Moreno's testimony makes clear that her coworkers' push for her termination was prompted by their unwillingness to cover her duties while she was on maternity leave without the raise they were falsely promised by Devine. ROA.176. Moreno

summarizes their plan succinctly: "[T]hey used that to their benefit that I was pregnant and that I was going to be taking time off in a few months and they knew that [Roberts] wouldn't be able to . . . let them leave and me leave within a few weeks after." ROA.188.

Further, DIS's own rationale confirms that Moreno's pregnancy and impending leave were motivating factors in her termination. Roberts explicitly linked the colleagues' threats with coverage concerns arising from Moreno's upcoming FMLA leave, stating: "You're about to go on leave so…I can't lose two people when you're going to be taking a leave here soon." ROA.184. If Moreno had not been pregnant and scheduled for leave, her colleagues' threats would not have posed a coverage issue. This admission places DIS's explanation firmly within the scope of mixed-motive discrimination.

Because Moreno's pregnancy and related leave were at least one motivating factor in her termination, summary judgment should be reversed.

## VI. This Case Is Appropriate for Trial

The evidence in this case suggests that different folks can draw different conclusions as to whether Moreno's pregnancy or leave motivated her termination. This underscores why summary judgment is improper. Reasonable minds can differ.

A summary judgment predicated on facts genuinely in dispute is improper. In weighing the evidence, the court necessarily substitutes its judgment of the evidence

for that of the jury. *See Tolan*, 572 U.S. at 659 (holding that court displayed a "clear misapprehension of summary judgment standards" when it credited the version of events from the witness of the summary judgment movant, while failing to credit the plaintiff's own recollection of events).

Moreover, it is important to look at the facts in this case in their entirety when deciding on pretext. As this Court recently reasoned in an employment case, "[i]t is necessary for the facts allegedly supporting a claim to be evaluated in their entirety." *Dabassi*, 107 F.4th at 506. Likewise, "[j]ust as '[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, . . . similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.'" *Donaldson v. CDB Inc.*, 335 Fed. Appx. 494, 503 (5th Cir. 2009) (citations omitted); s*ee also Starnes v. Wallace*, 849 F.3d 627, 635 (5th Cir. 2017) (reversing summary judgment for the employer and emphasizing the importance of looking at the "big picture" in analyzing whether there is sufficient evidence of pretext to find for the plaintiff).

The big picture demonstrates that a genuine issue of fact exists on whether Moreno's pregnancy and FMLA leave motivated her termination. DIS is not entitled to a judgment as a matter of law.

Sworn testimony in favor of Moreno should be credited. This Court has held that where an employee's "statements are no more and no less self-serving" than

those of the employer's, to "signal that an employee's account could never prevail over an employer's…would render an employee's protections against discrimination meaningless." *Heinsohn*, 832 F.3d at 245.

Finally, as the Supreme Court has long cautioned, summary judgment should be used sparingly in litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged decisionmakers, and hostile witnesses thicken the plot. *See Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962) ("It is only when witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of even handed justice.").

## **CONCLUSION**

Moreno asks this Court to reverse the district court's grant of summary judgment against her.

Respectfully submitted,

/s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
712 Main Street, Suite 900
Houston, TX 77002
713-401-3558 – Telephone
ak@ahadkhanlaw.com - Email

Attorney for Plaintiff-Appellant
Jocelyn Moreno

47

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was filed with the United States Court of Appeals for the Fifth Circuit and served electronically via the ECF filing system upon counsel of record listed below on the 16th day of December 2025.

Gregg Rosenberg
Rosenberg & Associates
3518 Travis Street, Suite 200
Houston, Texas 77002
gregg@rosenberglaw.com

/s/ Ahad Khan
Ahad Khan
Counsel for Plaintiff-Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 10,060 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5th CIR. R. 32.1, and the type-style requirements of FED. R. APP. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.103.4 with a 14-point font named Times New Roman.

/s/ Ahad Khan
Ahad Khan
Counsel for Plaintiff-Appellant