No. 25-20470

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOCELYN MORENO,
*Plaintiff - Appellant,*
v.

DEALER INTEGRATED SERVICES, LLC,
*Defendant - Appellee.*

Appealed from the United States District Court
for the Southern District of Texas
District Court Cause No. 4:24-CV-00981
The Honorable Kenneth M. Hoyt, Presiding

**BRIEF OF APPELLEE
DEALER INTEGRATED SERVICES, LLC**

Gregg M. Rosenberg
Texas State Bar No. 17268750
ROSENBERG & ASSOCIATES
3518 Travis, Suite 200
Houston, Texas 77002
gregg@rosenberglaw.com
(713) 960-8300 Telephone
(713) 621-6670 Facsimile
ATTORNEY FOR APPELLEE,
DEALER INTEGRATED SERVICES, LLC

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Plaintiff-Appellant**: Jocelyn Moreno

2. **Council for Plaintiff-Appellant**: Ahad Khan of Ahad Khan Law

3. **Defendant-Appellee**: Dealer Integrated Services, LLC

4. **Council for Defendant-Appellee**: Gregg M. Rosenberg of Rosenberg & Associates

> */s/ Gregg M. Rosenberg*
> **GREGG M. ROSENBERG**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee does not believe that an oral argument is necessary, as the facts are simple and straightforward.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ................................................................ 2

STATEMENT REGARDING ORAL ARGUMENT ...................................................... 3

TABLE OF AUTHORITIES .......................................................................................... 5

ISSUES PRESENTED ................................................................................................... 11

STATEMENT OF THE CASE ....................................................................................... 12

SUMMARY OF THE ARGUMENT .............................................................................. 19

ARGUMENT & AUTHORITIES .................................................................................. 21

    A. Standard of Review.......................................................................................... 21

    B. Title VII Pregnancy Discrimination ............................................................. 22

        1. Direct Evidence ........................................................................................ 23

        2. Indirect Evidence ..................................................................................... 25

    C. FMLA Claims .................................................................................................. 27

        1. FMLA Interference.................................................................................. 28

        2. FMLA Retaliation.................................................................................... 30

            i. Direct Evidence.................................................................................. 30

            ii. Traditional McDonnell Douglas Analysis ........................... 31

            iii. Mixed-Motive or Modified
                McDonnell Douglas Analysis ............................................ 33

        3. Notice of FMLA Rights............................................................................ 35

CONCLUSION .............................................................................................................. 38

CERTIFICATE OF COMPLIANCE .............................................................................. 39

CERTIFICATE OF SERVICE........................................................................................ 39

# TABLE OF AUTHORITIES

**Case**          **Page(s)**

*Auguster v. Vermilion Parish School Board,*
249 F.3d 400 (5th Cir. 2001) ............................................................. 23

*Bernard v. Bishop Noland Episcopal Day Sch.,*
630 F. App'x 239 (5th Cir. 2015) ....................................................... 37

*Bisong v. Univ. of Houston,*
493 F. Supp. 2d 896 (S.D. Tex. 2007) ........................................... 22-23

*Caldwell v. KHOU-TV,*
850 F.3d 237 (5th Cir. 2017) ............................................................. 28

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................... 21

*Cuellar v. Keppel Amfels, L.L.C.,*
731 F.3d 342 (5th Cir. 2013) ............................................................. 28

*Downey v. Strain,*
510 F.3d 534 (5th Cir. 2007) ............................................................. 35

*Fabela v. Socorro Independent School District,*
329 F.3d 409 (5th Cir. 2003) ............................................................. 23

*Ford Motor Co. v. Texas Dep't of Transp.,*
264 F.3d 493 (5th Cir. 2001) ............................................................. 21

*Fullen v. Galveston Indep. Sch. Dist.,*
564 F. Supp. 2d 719 (S.D. Tex. 2008) ............................................... 22

*Garcia v. Penske Logistics, LLC,*
165 F. Supp. 3d 542 (S.D. Tex. 2014) ............................................... 30

*Marshall v. Am. Hosp. Ass'n,*
157 F.3d 520 (7th Cir. 1998) ............................................................. 24

*Mayberry v. Vought Aircraft Co.*,
55 F.3d 1086 (5th Cir.1995) ................................................................. 22

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............................................................................. 25

*Nieto v. L & H Packing Co.*,
108 F.3d 621 (5th Cir. 1997) ............................................................... 22

*Okoye v. The Univ. of Tex. Houston Health Sci. Ctr.*,
245 F.3d 507 (5th Cir. 2001) ............................................................... 26

*Ragsdale v. Wolverine World Wide, Inc.*,
535 U.S. 81 (2002) ......................................................................... 36, 37

*Ray v. United Parcel Serv.*,
587 Fed. Appx. 182 (5th Cir. 2014) ................................................ 30, 31

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133 (2000) ............................................................................. 27

*Reilly v. TXU Corp.*,
271 F. App'x 375 (5th Cir. 2008) ................................................... 23, 25

*Richardson v. Monitronics Int'l, Inc.*,
434 F.3d 327 (5th Cir. 2005) ........................................................... 32-34

*Roberson v. Alltel Information Services*,
373 F.3d 647 (5th Cir. 2004) ............................................................... 22

*Shackelford v. Deloitte & Touche, LLP*,
190 F.3d 398 (5th Cir. 1999) ............................................................... 26

*Shirley v. Precision Castparts Corp.*,
726 F.3d 675 (5th Cir. 2013) ............................................................... 28

*Sprague v. Ed's Precision Mfg., LLC*,
548 F. Supp. 3d 627 (S.D. Tex. 2021) .................................................. 32

*Stout v. Baxter Healthcare Corp.*,
282 F.3d 856 (5th Cir. 2002) ...................................................... 22

*Stults v. Conoco, Inc.*,
76 F.3d 651 (5th Cir.1996) ......................................................... 21

*Tatum v. S. Co. Servs., Inc.*,
930 F.3d 709 (5th Cir. 2019) ...................................................... 32

*Wallace v. Methodist Hosp. Sys.*,
271 F.3d 212 (5th Cir. 2001) ...................................................... 24

*Way v. City of Missouri City*,
133 F.4th 509 (5th Cir. 2025) ..................................................... 28

*Wheat v. Fla. Par. Juv. Just. Comm'n*,
811 F.3d 702 (5th Cir. 2016) ...................................................... 32

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) .................................................................... 32

**Statutes**

29 C.F.R. § 825.208 ................................................................... 36

29 C.F.R. § 825.208(a)-(b)(1) ................................................... 36

29 C.F.R. § 825.300(b)(l) .......................................................... 36

29 U.S.C. §§ 2612(a)(1)(A) ...................................................... 27

29 U.S.C. § 2615 ....................................................................... 37

29 U.S.C. § 2615(a)(1) .............................................................. 27

29 U.S.C. § 2617 ....................................................................... 37

42 U.S.C. § 2000e–2(a)(1) ........................................................ 22

**Rules**

FED R. APP. P. 29(d) .................................................................. 39

FED R. APP. P.  32(a)(5) .............................................................. 39

FED R. APP. P.  32(a)(6) .............................................................. 39

FED R. APP. P. 32(a)(7)(B) .......................................................... 39

FED. R. APP. P. 32(f) .................................................................. 39

FED. R. CIV. P. 56(c) .................................................................. 21

Fifth Circuit Rule 28.2.1 ............................................................. 2

Fifth Circuit Rule 32.3 ............................................................... 39

No. 25-20470

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOCELYN MORENO,
*Appellant,*
v.

DEALER INTEGRATED SERVICES, LLC,
*Appellee.*

Appealed from the United States District Court
for the Southern District of Texas
District Court Cause No. 4:24-CV-00981
The Honorable Kenneth M. Hoyt, Presiding

**BRIEF OF APPELLEE
DEALER INTEGRATED SERVICES, LLC**

TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:

COMES NOW Appellee, Dealer Integrated Services, LLC (hereinafter referred to as "DIS" or "Appellee") and submits this Brief, and in support thereof would respectfully show the Court as follows:

Appellant Jocelyn Moreno (hereinafter referred to as "Moreno" or "Appellant") was dismissed from her "at will" employment with DIS after all of her colleagues threatened to quit if she was not terminated She had been antagonizing

9

and refusing to communicate with her coworkers and supervisors for months, giving DIS no reason to keep her employed. Her employment ended because of her own doing. Simply stated, she could not get along with her coworkers.

Moreno brought the underlying lawsuit against DIS under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Family Medical Leave Act ("FMLA"), alleging that she faced pregnancy discrimination, FMLA retaliation, and FMLA interference. Each of these claims fail because the undisputed evidence demonstrates that DIS had a legitimate, non-discriminatory reason for terminating Moreno's employment. There was no evidence of discriminatory or retaliatory animus, and she was not prejudiced by any lack of notice of her FMLA rights.

There are no genuine issues of material fact in this case; Appellant is unable to establish the prima facie elements of any of her claims. Therefore, the District Court was correct in granting DIS' Motion for Summary Judgment and dismissing each of Moreno's claims.

## ISSUES PRESENTED

1. Did the District Court err in finding that Moreno failed to satisfy her prima facie burden of Pregnancy Discrimination under Title VII?

2. Did the District Court err in finding that Moreno failed to establish her prima facie cases of FMLA Retaliation and FMLA Interference?

3. Did the District Court err in finding that Moreno is unable to prevail on her FMLA claim under a theory of failure to provide individualized notice?

## STATEMENT OF THE CASE

Moreno was employed by DIS from 2017 until her termination on June 30, 2023. At the time of her termination, she was a Payroll Administrator. In this position, Moreno worked with co-workers Valerie De la Cruz and Patricia Mauricio. ROA 87-88, 23:17–24:4. Due to personal issues, Moreno had a falling out with Mauricio and De la Cruz which impacted their working relationship. ROA 89, 26:9-20. The owner of DIS, Jonathan Chad Roberts, became aware of the disagreement between Moreno and her coworkers in March 2023. ROA 111, ¶ 5. Moreno also had a strained relationship with her supervisor, Office Manager Deborah Devine, whom she claims was "rude" and "disrespectful at times." ROA 90-91, 29:21–30:6.

Due to this conflict, Moreno refused to communicate with her colleagues, providing minimal acknowledgement, directing all questions to Devine or Roberts. She became visibly irritated when she was asked work-related questions, and closed her office door every day to avoid interacting with her coworkers. ROA 111-112, ¶ 5-7. Beyond creating a hostile, untenable environment, this was also a problem because communicating with her colleagues was part of Moreno's job. Her refusal to do so made it difficult for others to carry out their responsibilities.

In or around April 2023, Mauricio was assigned additional duties; she quickly became overwhelmed because the only person that could answer her questions was Moreno, who continued to refuse to talk to her. On April 13, 2023, Mauricio resigned

due to the toxic work environment. ROA 112, ¶ 9. On April 28, 2023, Devine and Roberts contacted Mauricio and offered her a position that would not involve direct daily interaction with Appellant. Mauricio accepted and returned to work on May 1, 2023. *Id*.

Moreno announced that she was pregnant in April 2023 and informed Roberts that she would need time off at the end of her pregnancy. When Moreno notified Devine and Roberts that she would need maternity leave, they began working together to discuss coverage immediately. ROA 92, 33:2-9. Moreno requested two (2) months of maternity leave, which Roberts granted without reservation. Moreno never asked for more than two months. ROA 112, ¶ 8; ROA 100, 45:2-25. Roberts' lack of hesitation in granting her exactly what she asked for demonstrates that DIS had no intention of denying Moreno the benefits she was entitled to under the FMLA. ROA 101, 46:7-14. Additionally, Moreno never testified to or presented evidence of any negative attitude towards her request for maternity leave from management.

Moreno claimed in her Complaint that she was not aware of her right to twelve (12) weeks of maternity leave. ROA 6 ¶ 13. However, she admitted in her deposition that DIS posts all required labor laws, including FMLA rights, in a public area which she could have viewed at any time. ROA 101-102, 46:15–47:5. Moreno testified that she did not look at the posters because she did not feel they were important, nor did she see the need to consult with HR regarding her rights when she became pregnant.

ROA 102, 47:8-25. She knew that her FMLA rights were posted if she wanted to read them. ROA 103, 48:22-25. Moreno acknowledged that the only reason she did not know that she was entitled to 12 weeks of maternity leave under the FMLA was because she chose not to read the posters. ROA 104, 50:15-18.

When Mauricio returned to work in her new position on May 1, 2023, Moreno's behavior only continued to worsen as she began refusing to communicate with anyone, including Devine. ROA 111, ¶ 10. Because Mauricio was moved to a new position, Moreno was tasked with taking back the payroll responsibilities Mauricio had been handling. However, Moreno refused to perform these duties, even when she was given direct instructions to do so. As time went on, Moreno became even more reclusive and hostile toward her coworkers. ROA 112, ¶ 11.

In or around mid-May 2023, Moreno told Devine that she would not be taking on any additional payroll duties unless she was given a $10,000 annual raise and that she might not return to work at all after giving birth. ROA 112, ¶ 13 Moreno asked Devine to speak with Roberts to request the raise, ask what maternity benefits she would receive, and tell him she would be on leave from September 15 to November 14. Devine and Roberts concluded that no raise would be given, that Moreno should be granted one (1) week of vacation, and that Mauricio would take over many of Moreno's duties while she was on leave. ROA 112, ¶ 14. Moreno was not happy with these benefits, but said that she would take her one-week vacation from

September 11 to September 15 and take leave from September 16 through November 15, 2023. *Id*.

A few weeks later, Roberts, Devine, and Moreno had a meeting to make changes in the payroll paperwork process in order to reduce time wasted on printing and scanning. ROA 113, ¶ 15. Appellant did not take the changes well, insisting that the process remain the same. *Id*. Around that same time, Roberts, Devine, and Moreno met to discuss issues in the office between the staff. During that meeting, Moreno was instructed to train Mauricio to take over payroll duties while she was on maternity leave. *Id*. Moreno reacted by becoming aggressive and hostile. *Id*.

On June 23, 2023, De la Cruz had a private conversation concerning personal issues with Devine behind closed doors. ROA 108-110, 81:10–83:12. On June 26, Roberts revealed to Devine that Moreno had been listening on the other side of the door during that conversation. ROA 113, ¶ 17. Devine requested an immediate staff meeting with Roberts, De la Cruz, Mauricio, and Moreno. ROA 113, ¶ 18 During the meeting, Roberts stated that it was inappropriate and unacceptable to listen in on closed-door conversations in the workplace. *Id*.

Following that meeting, the environment in the office continued to decline as Moreno's treatment of her coworkers became more hostile. As a result, on June 30, 2023, both Mauricio and De la Cruz told Devine that they were resigning immediately because of the toxic environment created by Moreno. ROA 113, ¶ 19.

Moreno acknowledged in her deposition that Mauricio and De la Cruz threatened to quit if DIS did not terminate her. ROA 105, 68:11-15.

Devine and Roberts met with Moreno that same day to discuss the situation. ROA 113, ¶ 20. Moreno became hostile and unreasonable almost instantly, which contributed to Roberts terminating her employment. *Id*. Moreno conceded in her deposition that Mauricio and De la Cruz threatened to quit if she was not terminated and contended that Devine also threatened to quit if she was not let go. ROA 106-107, 72:8–73:25. Moreno then demanded that Mauricio and De la Cruz be brought in so she could interrogate them. ROA 113, ¶ 21. Roberts refused and told her to clear out her personal belongings. *Id*. Instead, Moreno stormed into Mauricio's office to confront her. *Id*. Because of this wildly inappropriate behavior, Roberts was forced to escort Moreno out of the building. *Id*.

Following her termination, DIS sent Moreno a letter explaining that her employment was terminated as a result of her conduct, specifically her hostile relationships with other employees and argumentative conduct when discussing making changes to the payroll process. ROA 116. Moreno even acknowledged that she was fired because of the conflict she had with her colleagues. Specifically, in a post-employment text message exchange with a former coworker, Appellant admitted that she was fired because Mauricio, De la Cruz, and Devine "all threatened

16

to quit so Chad [Roberts] let [Moreno] go since he couldn't afford to lose all of them," which left him with "no other option but to get rid of" her. ROA 118.

DIS filed a Motion for Summary Judgment on July 28, 2025, arguing that the record had demonstrated that it had legitimate reasons for terminating Moreno's employment, that DIS had not interfered with her rights under the FMLA, and that even if Moreno could satisfy her prima facie burden, she failed to take reasonable steps to mitigate her damages. ROA 62. Moreno filed a Response on August 18, 2025. ROA 120. DIS replied on September 16, 2025. ROA 223.

On September 16, 2025, the District Court entered a Memorandum and Opinion, finding that Moreno had failed to satisfy the prima facie cases of any of her claims. ROA 243. The Court first found that there was no direct evidence of discrimination and thus that the *McDonnell Douglas* framework applies to Moreno's discrimination claim. Applying that framework, the Court determined that, for the purposes of establishing a prima facie case on summary judgment, Moreno satisfied her initial burden. However, it went on to state that her claim still fails because DIS offered a legitimate reason for Moreno's termination—her disruptive and toxic interactions with coworkers—and she failed to show that this reason was pretextual. ROA 249-250

Regarding Moreno's FMLA claims, the Court applied a burden shifting framework as well, noting that, because Moreno did not directly state that

discrimination was not the sole reason for her termination, the mixed motive framework does not apply. ROA 250-251. The Court did not explicitly state whether Moreno had satisfied the prima facie burden of either FMLA Retaliation or Interference, instead stating that even if she could, she cannot rebut DIS' legitimate reason for her termination and thus her claim fails. The Court also stated that the FMLA provides for *up to* 12 weeks of unpaid leave and that DIS granted Moreno exactly what she requested, which was two months of leave. ROA 250.

Finally, regarding Moreno's claim that DIS violated the FMLA by failing to provide individualized notice, the District Court found that although there is no evidence that DIS provided the required notice, there is also no evidence that Moreno was prejudiced, thus dismissing this claim as well. ROA 251-252.

The District Court did not address DIS' argument that Moreno neglected to take reasonable steps to mitigate her damages.

## SUMMARY OF THE ARGUMENT

The District Court was correct in granting DIS' Motion for Summary Judgment, as there are no genuine issues of material fact in dispute and it is clear from the record that each of Moreno's claims fail as a matter of law.

Moreno's claim for Pregnancy Discrimination fails for several reasons. First, there is no direct evidence of discrimination, but even if there was, it would be inconsequential because DIS has established that it had legitimate reason to

terminate her employment and would have done so regardless of Moreno's pregnancy. Second, Moreno is unable to satisfy her prima facie case, as she cannot show either that she was replaced by someone outside of her protected class or that she was treated less favorably than similarly-situated employees outside of her class. However, even assuming Moreno met her initial prima facie burden, this claim would still not prevail because the record reflects that DIS dismissed Moreno for legitimate, nondiscriminatory reasons. Specifically, it is undisputed that Moreno was terminated after she refused to professionally communicate with her colleagues for months, creating such a hostile work environment that they all threatened to quit if she was not dismissed.

Appellant's FMLA claims for Interference and Retaliation are similarly meritless. Her Interference claim fails because she cannot show that DIS denied her the benefits to which she was entitled, as it immediately granted her the leave she requested. Nonetheless, even if the Court finds that Moreno did satisfy her prima facie burden, the uncontroverted record demonstrates that DIS had legitimate reason for terminating Moreno which was unrelated to her pregnancy or requested FMLA leave.

Moreno's FMLA Retaliation claim fails on similar grounds. There is no direct evidence of retaliatory intent, and even if there was, there is sufficient evidence to support the contention that DIS would have terminated her regardless. Because there

19

is no direct evidence, a burden-shifting analysis is applied. The mixed-motive analysis is not applicable in this case, but even if it was, both the traditional and modified burden-shifting analyses demonstrate that there was no actionable retaliation. Appellant cannot satisfy her prima facie case, as there is nothing to suggest that a causal link exists between her request for FMLA leave and her termination. But even assuming this burden was met, DIS had a legitimate, nonretaliatory reason for her dismissal and would have terminated her employment regardless of her request for FMLA leave.

Finally, Moreno is unable to prevail on her claim that DIS failed to comply with the FMLA notice requirement for two reasons. First, DIS complied with the applicable notice requirements by posting notice of employees' FMLA rights in a prominent area. And second, the record definitively establishes that Moreno was not prejudiced by any alleged lack of notice, as she was terminated before the scheduled commencement of her leave for documented reasons unrelated to her pregnancy or requested maternity leave.

For these reasons, and others explained more thoroughly in this Brief, it is clear that the district court rightfully granted Appellee's Motion for Summary Judgment and dismissed Appellant's case. Appellee thus respectfully requests that this Court affirm the district court's judgment.

Case: 25-20470     Document: 18     Page: 21     Date Filed: 01/22/2026

## ARGUMENT & AUTHORITIES

**D.      Standard of Review**

Circuit courts "review grants of summary judgment de novo, guided by the same Rule 56 standard as the District Court." *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (*citing* FED. R. CIV. P. 56(c); *Stults v. Conoco, Inc.*, 76 F.3d 651, 654 (5th Cir.1996)). "Pursuant to Rule 56, a party may obtain summary judgment when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id*. (*quoting* FED. R. CIV. P. 56(c)).

A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either: (1) submitting summary-judgment evidence negating the existence of a material element of a claim; or (2) showing there is no evidence to support an essential element of a claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* at 322.

21

## E.   Title VII Pregnancy Discrimination

"Title VII of the Civil Rights Act prohibits an employer from 'discriminat[ing] against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....'" *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002) (*quoting* 42 U.S.C. § 2000e–2(a)(1)). "The PDA amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination." *Id*. "A private right of action exists under Title VII only for violations involving intentional discrimination." *Fullen v. Galveston Indep. Sch. Dist.*, 564 F. Supp. 2d 719, 728 (S.D. Tex. 2008) (*citing Roberson v. Alltel Information Services*, 373 F.3d 647, 651 (5th Cir. 2004)). "Title VII does not protect plaintiffs from unfair decisions, but only from decisions based on unlawful discrimination." *Id*. (*citing Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)). Thus, "[t]he issue…is not whether the defendant made erroneous decisions, but whether the defendant's decisions were made with discriminatory intent." *Id*. (*citing Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir.1995)).

### 1. Direct Evidence

A "Plaintiff may rely on either direct or circumstantial evidence, or both, to prove [her] claims." *Id*. "Direct evidence is 'evidence which, if believed, proves the fact in question without interference or presumption.'" *Bisong v. Univ. of Houston*,

493 F. Supp. 2d 896, 905 (S.D. Tex. 2007) (*quoting Fabela v. Socorro Independent School District*, 329 F.3d 409, 415 (5th Cir. 2003)). "If a plaintiff presents direct evidence of discrimination, [she] is allowed to bypass the burden-shifting analysis used in circumstantial evidence cases." *Id*. Instead, "[t]he presentation of credible direct evidence that discrimination motivated or was a substantial factor in the adverse employment action shifts the burden to the employer to show that, regardless of discrimination, the same decision would have been made." *Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008).

In order for a statement "to constitute direct evidence of…discrimination, it must meet the four-factor test in *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 405 (5th Cir. 2001): The statement must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue." *Id*.

In the present case, Moreno argues that Roberts' comment that he could not afford to lose two other employees at the same time that Moreno was going on maternity leave constitutes direct evidence of discrimination. The District Court found that this comment did not constitute direct evidence because it was related to DIS' potential loss of two other employees, not Moreno's pregnancy, that those

employees' threat to resign was not due to her being pregnant or requesting maternity leave, and that Roberts did not directly mention her pregnancy. ROA 248.

Roberts' "statement merely refers to [Moreno's] absences from work due to her maternity leave[]. It is only if [the court were to] infer that [Roberts'] reference to [Moreno's] absence[] is code language for [her] pregnancies that it relates to [Moreno's] protected class. If [courts] were to make this inference and countenance this general statement as evidence of discriminatory intent, [they] would find in effect that any employer's remark observing that an employee has taken leave constitutes such evidence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222–23 (5th Cir. 2001). The Fifth Circuit refused to do so, noting that the PDA "requires the employer to ignore an employee's pregnancy, but…not her absence from work, unless the employer overlooks the comparable absences of non-pregnant employees." *Id.* (*quoting Marshall v. Am. Hosp. Ass'n*, 157 F.3d 520, 526 (7th Cir. 1998)).

Roberts' statement referred only to Moreno's upcoming scheduled leave and the financial and logistical difficulties DIS would have if it were to lose two other employees at the same time; he did not directly mention her pregnancy or indicate that he held any discriminatory animus towards her due to her being pregnant. If anything, Roberts' comment demonstrates that his decision to terminate Moreno was

not discriminatory, but rather that it was a financial and logistical choice he was forced to make when all of Moreno's colleagues threatened to resign.

Moreover, even *if* Roberts' statement constituted direct evidence of discrimination—which it does not—the granting of summary judgment would have still been appropriate, as the same decision to terminate her would have been made regardless of any alleged discrimination. This is because Moreno was at the center of significant interpersonal conflict within the workplace which had caused such a hostile and untenable environment that all of her coworkers threatened to quit. This *clearly* would have been grounds to terminate her employment regardless of whether she was scheduled to take maternity leave.

2. Indirect Evidence

"If direct evidence is not present or is unavailing, a plaintiff may use circumstantial evidence to demonstrate discrimination. [Courts] analyze such cases using the framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, L.Ed.2d 668 (1973), which establishes a burden-shifting methodology whereby the plaintiff is first required to present a *prima facie* case of discrimination." *Reilly*, 271 F. App'x, at 380 (internal quotation marks and citations omitted).

To establish such a prima facie case under Title VII, an employee must demonstrate that she: (1) belonged to a protected category; (2) was qualified for the

position; (3) was subjected to an adverse employment action[1]; and (4) was replaced by someone outside of the employee's protected class or show that other similarly-situated employees outside of the protected class were treated more favorably than the employee. *McDonnell Douglas*, 411 U.S., at 802; *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999); *Okoye v. The Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-513 (5th Cir. 2001).

For the purposes of its Motion for Summary Judgment, DIS conceded that Moreno belonged to a protected category, that she was qualified for her position, and that she was subjected to an adverse employment action when she was dismissed. However, it argued that she cannot satisfy the fourth element of her claim, as she is unable to show that she was replaced by someone outside of her protected class or that other similarly-situated employees who had the same behavioral issues as Moreno but were outside of her protected class were treated more favorably.

The District Court disagreed with DIS on this point, assuming instead that Moreno had satisfied her initial prima facie burden. ROA 249. When a Plaintiff has satisfied her prima facie case of discrimination, the burden then shifts to the Defendant to articulate a legitimate nondiscriminatory reason for the termination. If the Defendant does so, the burden shifts back to the Plaintiff to show that the

---

[1] While DIS concedes that it terminated Moreno's employment, the termination had nothing to do with her pregnancy. Rather, DIS had a legitimate non-discriminatory business reason to terminate Moreno's employment.

proffered reason was a pretext for discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000).

Assuming for the purposes of this Brief that Moreno did satisfy each element of her prima facie case of pregnancy discrimination, her claim would still fail as a matter of law because DIS has provided evidence that she was terminated for legitimate reason. It is undisputed that Moreno's relationships with Mauricio, De la Cruz, and Devine were all strained and that this conflict came about well before she was pregnant. It is also undisputed that this conflict was either the cause of or a major contributor to the toxic work environment which led to all of Moreno's colleagues threatening to quit if she was not terminated. Moreno has not disputed the fact that her coworkers threatened to quit nor has she provided any evidence to suggest that DIS' stated legitimate reason for her termination was pretextual.

## F.    FMLA Claims

Eligible employees are entitled to up to twelve (12) workweeks of leave during any twelve (12) month period because of the birth of a daughter or son. 29 U.S.C. §§ 2612(a)(1)(A). Employers are prohibited from interfering with or denying the exercise of this right. 29 U.S.C. § 2615(a)(1). In analyzing whether an employer is liable for both FMLA Interference and Retaliation, courts utilize burden-shifting frameworks in which the employer has the burden of demonstrating that it terminated the employee-Plaintiff for a legitimate reason once the Plaintiff has

established her prima facie case. Crucially, the employer's proffering of "a legitimate cause for termination would preclude [the employee-Plaintiff's] FMLA claim[s]." *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 683 (5th Cir. 2013).

### 1. FMLA Interference

"To establish a prima facie case of interference under the FMLA, a plaintiff must show that (1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [s]he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

"Once the plaintiff states a prima facie claim, the burden shifts to the employer to articulate a legitimate reason for the employment action, which the employee can rebut by raising a genuine factual dispute over whether the employer's proffered reason was pretextual." *Way v. City of Missouri City*, 133 F.4th 509, 523 (5th Cir. 2025) (*citing Caldwell*, 850 F.3d, at 245). "Beyond showing that an employer 'denied her exercise or attempt to exercise FMLA rights,' an employee must also show that the violation prejudiced her." *Id.* (*quoting Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013)).

DIS argued that Moreno's prima facie case of FMLA Interference fails because she has failed to show that DIS denied her the benefits to which she was

28

entitled under the statute. Moreno requested two (2) months of maternity leave; Roberts immediately granted her the requested two months, demonstrating that DIS had no intention of interfering with her FMLA rights. While the District Court did not explicitly state whether it found that Moreno satisfied her FMLA Interference prima facie case, it did "note[] that the FMLA provides for 'up to twelve weeks of unpaid leave'" and that "[t]he record reflects that Moreno requested, and was immediately granted, two months of leave." ROA 251. This language suggests that the Court found that DIS did not deny Moreno her FMLA benefits.

However, even if Moreno did meet her initial prima facie burden, her FMLA Interference claim still fails because, as explained above, the record clearly shows that DIS terminated Moreno for a legitimate reason—her hostile, unprofessional treatment of her colleagues. Moreno contends that Devine was the real source of interpersonal conflict in the office and that conditions did not improve after she was terminated. Even if this were true, it would not render DIS' proffered reason for her termination to be pretextual, as DIS had every reason to believe that Moreno's behavior was causing a hostile, toxic work environment. Specifically, it is undisputed that there was significant tension between Moreno and her colleagues which predated her pregnancy, that she refused to communicate with her coworkers, that the workplace had become dysfunctional, and that Moreno's colleagues all threatened to quit if she was not terminated. Moreno's pattern of behavior was wildly

inappropriate for an office setting and made it nearly impossible for her colleagues to carry out their duties. She was given every opportunity to remedy her behavior, but it only continued to worsen over time, which left DIS with no choice but to terminate her employment.

Moreno has not established a prima facie case of FMLA Interference, as she cannot show that DIS denied her the benefits to which she was entitled under the statute. Even if she could meet this burden, however, this claim would still fail because DIS has provided evidence that she was terminated for a legitimate reason unrelated to her pregnancy or FMLA benefits.

2.  FMLA Retaliation

   i.    *Direct Evidence*

When analyzing a FMLA Retaliation claim, a court first "a court asks whether the plaintiff has presented direct evidence of relation and, if not, then it applies the *McDonnell–Douglas* burden-shifting framework." *Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 556 (S.D. Tex. 2014) (*citing Ray v. United Parcel Serv.*, 587 Fed. Appx. 182, 187 (5th Cir. 2014)). As with direct evidence of discrimination addressed above, in order to constitute direct evidence of retaliation, "the evidence 'must be such that, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions.'" *Garcia*, 165 F. Supp. 3d,

at 556 (*quoting Ray*, 587 Fed. Appx., at 187). The same four-factor test applied to alleged direct evidence of discrimination applies to retaliation as well. *Id.*, at 558.

The comment Roberts made, that DIS could not afford to lose two other employees at the same time that Moreno was taking maternity leave, does not constitute direct evidence of intent to retaliate against her for taking FMLA leave. If anything, this comment demonstrates that Roberts' decision to terminate Moreno's employment was based purely on logistical and financial concerns, as he did not intend to retaliate against her but could not afford to lose three or four of his employees at the same time.

Moreover, even if Roberts' comment was direct evidence of retaliatory intent, Moreno's claim would still fail because DIS had legitimate reason for terminating her employment and would have done so regardless of whether she requested FMLA leave. Her hostile, inappropriate behavior towards her coworkers had caused such a toxic workplace that all of her colleagues threatened to quit if she was not dismissed. The fact that this occurred not long before she was scheduled to take maternity leave may have put additional practical constraints on DIS to find coverage, but Appellee could not afford to lose Mauricio, De la Cruz, and Devine simultaneously regardless.

    *ii.    Traditional McDonnell Douglas Analysis*

"In the absence of direct evidence of discriminatory intent, [courts] apply the *McDonnell Douglas* framework to determine the reason for an employee's

discharge." *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019). Under that framework, if "the employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer succeeds in doing so, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332–33 (5th Cir. 2005).

"To make a prima facie showing of retaliation under the Family and Medical Leave Act, [a plaintiff] must show that: '(1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between her protected activity and the adverse action.'" *Sprague v. Ed's Precision Mfg., LLC*, 548 F. Supp. 3d 627, 634–35 (S.D. Tex. 2021) (*quoting Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016)). In order "to satisfy the 'causal link' requirement of a Title VII retaliation claim, the employee must provide substantial evidence that 'but for' exercising protected rights, she would not have been discharged." *Wheat*, 811 F.3d, at 705 (*citing Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013)).

Moreno's prima facie case of FMLA Retaliation fails because she cannot show that a causal link exists between her request for FMLA leave and her termination. The District Court did not explicitly state whether it found that Moreno satisfied her

initial prima facie burden or not, but it did hold that even assuming she did meet this burden, her claim would fail because she cannot rebut DIS' legitimate reason for her termination. ROA 251. This is because DIS has shown that the reason for Moreno's termination was legitimate, nondiscriminatory, nonretaliatory, and would have occurred regardless of whether Moreno requested FMLA leave. As explained above, DIS terminated Moreno's employment because of her relationships with and behavior towards her colleagues was unacceptable and had created a toxic workplace. DIS demonstrated every intention of abiding by the FMLA and had no issue granting Moreno maternity leave. She was not terminated when she announced her pregnancy or when she requested leave, but months later when her behavior became so inappropriate that her colleagues threatened to quit if she was not let go.

iii.    *Mixed-Motive or Modified McDonnell Douglas Analysis*

"The traditional *McDonnell-Douglas* framework does not always apply in FMLA retaliatory discharge cases…The mixed-motive framework applies to cases in which the employee concedes that discrimination was not the *sole* reason for her discharge, but argues that discrimination was a motivating factor in her termination." *Richardson*, 434 F.3d, at 333 (emphasis in original). The District Court found that the mixed-motive analysis does not apply to this case because Moreno did not directly concede that discrimination was not the sole reason for her discharge. ROA 250. This is accurate. Moreno's Original Complaint does not concede that she was

terminated partially for reasons unrelated to discrimination and retaliation but that discrimination was a motivating factor in this decision. Instead, it argues that DIS' reasons for terminating her employment are pretextual. ROA 13, ¶ 64. Likewise, while her Response to DIS' Motion for Summary Judgment argues for the application of the mixed-motive analysis, she again did not concede that DIS terminated her partially for reasons unrelated to FMLA retaliation. Thus, the District Court was correct in holding that the mixed-motive analysis is inapplicable to this case.

However, even if the Court were to find that the mixed-motive analysis should be applied, Moreno's FMLA Retaliation claim still fails. "Within the mixed-motive framework, (1) the employee must make a prima facie case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or—and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson*, 434 F.3d, at 333. "If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus." *Id*. (emphasis in original).

As previously explained, Moreno has failed to satisfy her prima facie case, as she cannot show that a causal link exists between her requesting FMLA leave and her termination. Assuming for the purposes of this analysis that she *had* met that burden, her claim would fail. DIS has provided a legitimate reason for Moreno's termination and, despite the Appellant's failure to prove that discrimination was a motivating factor in her termination, DIS has also demonstrated that it would have taken the same action regardless of her pregnancy or request for FMLA leave. DIS had every reason to terminate Moreno's employment, as her unacceptable behavior created a toxic work environment which caused all of her colleagues to threaten to quit. It would have been an extremely imprudent business decision to retain one troublesome employee who refused to communicate or treat her colleagues with respect while losing the entire rest of the office staff. Thus, this would have been grounds for termination regardless of whether she was pregnant or requested maternity leave.

3. Notice of FMLA Rights

Moreno argued that DIS failed to comply with the FMLA notice requirement, because it did not provide individualized notice of her FMLA eligibility, citing *Downey v. Strain,* 510 F.3d 534, 537-38 (5th Cir. 2007). However, that case can be distinguished from the present facts, as the court in *Downey* stated that the employer was required to provide the employee with "individualized written notice that the

[leave the plaintiff in that case took] would be designated as FMLA leave, as required by FMLA regulations," *citing* 29 C.F.R. § 825.208(a)-(b)(1). This deals with an employer failing to tell an employee that a *specific instance* of medical leave was going to be treated as FMLA leave, meaning that the employer could not retroactively designate previously granted leave as FMLA leave without notifying the employee. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 81, 122 S. Ct. 1155, 1157, 152 L. Ed. 2d 167 (2002) ("29 CFR § 825.208 [requires]…that an employer give employees written notice that an absence will be considered FMLA leave."). This is was not the issue in the present case. Moreover, even if § 825.208 were relevant to the case at bar, it is currently categorized as [Reserved]. *See* 29 C.F.R. § 825.208.

Moreno also claimed that DIS was required to provide her with individualized notice of her eligibility to take FMLA leave within five business days pursuant to 29 C.F.R. § 825.300(b)(l). However, § 825.300(b)(1)–also states that, "Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA–qualifying reason in the applicable 12–month period." DIS mentioned the FMLA after Moreno announced her pregnancy but long before the scheduled commencement of the first instance of leave, admitting that Devine conducted an internet search of the FMLA requirements and relayed this information to Roberts.

More importantly, even if DIS did fail to abide by the notice requirements set out in the FMLA, Moreno's claim still fails because she has not, and cannot, show that she was prejudiced by the lack of notice. In order to "[t]o prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation." *Ragsdale*, 535 U.S. 81, at 89. Where "the lack of individualized notice had nothing to do with [the plaintiff] not taking leave or losing her job," the lack of individualized notice has caused no prejudice and thus the plaintiff cannot prevail. *Bernard v. Bishop Noland Episcopal Day Sch.*, 630 F. App'x 239, 243 (5th Cir. 2015).

The District Court found that, while there was no evidence that DIS abided by the FMLA notice requirements, there was also no evidence that Moreno was prejudiced by the lack of notice. The record clearly demonstrates that, although Moreno was not personally informed that she was entitled to up to twelve (12) weeks of unpaid leave, she was not prejudiced by this lack of individualized notice because she did not lose any benefits or sustain any other losses as a result of being unaware of this right. This is because DIS has established that Moreno was terminated because she was at the center of interpersonal conflicts within the office which led to all of her coworkers threatening to quit if she was not terminated. These issues

37

had absolutely nothing to do with Moreno's awareness of her eligibility under the FMLA and would have occurred regardless of whether she was personally informed of the full extent of her FMLA rights. Because Moreno was not harmed by the alleged lack of individualized notice, she is afforded no relief under the statute.

## CONCLUSION

Moreno's claim is for nothing more than the fact that she was terminated for creating unrest in her employment setting, for not getting along with her co-workers and for usurping authority. She was an "at will" employee who was terminated. The case is as simple as that. The Court will note that DIS did not pursue relief under the frivolous appeal rule. All it wants is closure. Appellee requests that the District Court's judgment in all respects be affirmed.

Dated: January 22, 2026

Respectfully submitted,

*/s/ Gregg Rosenberg*
Gregg M. Rosenberg
Texas State Bar No. 17268750
ROSENBERG & ASSOCIATES
3518 Travis, Suite 200
Houston, Texas 77002
gregg@rosenberglaw.com
(713) 960-8300 Telephone
(713) 621-6670 Facsimile
ATTORNEY FOR APPELLEE,
DEALER INTEGRATED SERVICES, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed and

served electronically on this the 22nd day of January 2026 on the following:


Ahad Khan
State Bar No. 24092624
712 Main Street, Suite 900
Houston, Texas 77002
(713) 401-3558
ak@ahadkhanlaw.com
**ATTORNEY FOR APPELLANT**


/s/ Gregg M. Rosenberg
**GREGG M. ROSENBERG**

39

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B), and 29(d), and Fifth Circuit Rule 32.3, I hereby certify that this brief contains 6,670 words, not including the parts excluded by FED. R. APP. P. 32(f), as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point size Equity font.

*/s/ Gregg M. Rosenberg*
**GREGG M. ROSENBERG**